DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Mark E. King has appealed his conviction for grand theft and breaking and entering from the Summit County Common Pleas Court. This Court affirms.
 I.
On October 14, 1999, Defendant was indicted by the Summit County Grand Jury for one count of grand theft and one count of breaking and entering. Defendant entered a plea of not guilty and the case proceeded to trial. On February 4, 2000, the jury found Defendant guilty, and the trial court sentenced him accordingly. Defendant timely appealed, asserting four assignments of error. For ease of discussion, this Court has consolidated his arguments.
 II. Assignment of Error Number One The conviction of the [Defendant] for the charge of grand theft and breaking and entering in this case is against the manifest weight of the evidence and should be reversed.
 Assignment of Error Number Two The trial court incorrectly denied [Defendant's] motion for acquittal in violation of [Crim.R.] 29; specifically, there was not sufficient evidence to prove the offense (sic) of grand theft and breaking and entering beyond a reasonable doubt.
 Assignment of Error Number Three The trial court erred to the prejudice of [Defendant] and in violation of [Crim.R.] 29(A), Article 1, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, when it denied [Defendant's] motion for acquittal.
 Assignment of Error Number Four The trial court erred in convicting [Defendant] of grand theft and breaking and entering for lack of corroboration of [the] state's witnesses[.]
Essentially Defendant has asserted that the state failed to prove beyond a reasonable doubt that he committed the offenses, and that his conviction is against the manifest weight of the evidence. Specifically, Defendant has argued that the state presented no witnesses who saw him enter the store, take the money, and leave. This Court disagrees.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
"[A]s an initial matter, * * * evaluations of the sufficiency of the evidence put forth by the state and the weight of the evidence adduced at trial are separate and legally distinct determinations." State v. Gulley
(Mar. 15, 2000), Summit App. No. 19600, unreported. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386
("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion.Id. at 390 (Cook, J. concurring). In determining whether the state has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the state. Gulley, supra. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
In the case at bar, Defendant was convicted of breaking and entering and grand theft. R.C. 2911.13(A) states that breaking and entering occurs when a person by force, stealth, or deception, trespasses in an unoccupied structure, with the purpose to commit therein any theft offense. Further, R.C. 2913.02(A)(3) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"
At trial, Celeste Pickering testified that she supervises the Gas and Oil stations in Summit County. On Monday, October 4, 1999, at approximately 5:15 a.m., Celeste received a phone call from Cindy Holmes, the manager of the Gas and Oil located at 3758 South Main Street. Cindy informed Celeste that someone had broken into the gas station. Celeste testified that, based on the company records for the proceeding Saturday and Sunday, approximately $8,632 was missing.
Next, Cindy Holmes testified that she went to the gas station on the morning in question and found the front door unlocked, the alarm off, and the safe empty. She admitted that she was experiencing financial problems and was evicted from her apartment. She stated that Defendant was a friend who lived within walking distance from the gas station. She further testified that approximately two weeks before the gas station was broken into, Defendant had told Cindy that he had a solution to solve their financial problems. Defendant then suggested that he would rob the gas station. Cindy allowed Defendant to take her spare key to the gas station and gave him the combination to the safe. She stated that Defendant knew that the code to the alarm was written on the keypad. Cindy testified that Defendant did not tell her exactly when he would break into the gas station, but told her that she would know when he did it. Cindy told the police that Defendant had the money and was going to use the cash to buy a car. She took the police to Dave's Auto Sales and identified Defendant there. Cindy was arrested and pled guilty to the charge of complicity to commit grand theft.
Detective Provie Tomei testified that he was unable to detect any fingerprints in the gas station. He immediately suspected that the crime was an inside job. Detective Tomei asked Tim Moneskey, the owner of the station, if he knew of any employees with financial problems. Tim identified Cindy Holmes and Defendant, an ex-employee, as possible suspects. Detective Tomei interviewed Cindy, who confessed to her involvement with the underlying offense. He went to Dave's Auto Sales and arrested Defendant. Shortly thereafter, Detective Tomei obtained permission from Defendant's mother to search her house. Detective Tomei discovered $1,000 in the front pocket of Defendant's blue vest jacket.
Next, Detective Keith Gowens testified that he found a briefcase in Defendant's bedroom, which contained bundles of cash wrapped up and labeled "for deposit only, FirstMerit Bank, Gas and Oil." The cash totaled approximately $2,120.
David Dodds, the owner of Dave's Auto Sales, testified that he met with Defendant on October 3, 1999. Defendant told David that he would return the next day to pick up a car. On October 4, 1999, Defendant paid David approximately $4,477 in cash. Frederick Rocco, the owner of Angle Insurance Agency, testified that Defendant paid him $100 in cash for an insurance policy for his new car.
For Defendant's case, Beverly Klimp testified that she evicted Cindy Holmes from an apartment on October 4, 1999. Ashvin Yajnik testified that on October 10, 1999, Cindy Holmes provided $200 as a security deposit for an apartment. Shortly thereafter, Cindy wrote a check for $900 to cover the rent.
Defendant's sister testified that Defendant was home the entire night in question. She stated that she went to sleep at 1:45 a.m. and did not wake up until 6:00 a.m. Defendant's mother also testified that Defendant was home the entire evening. She stated that she went to bed early, between 9:30 and 10:00 p.m.
Lastly, Defendant testified that he had approximately $12,000 in cash in his bedroom from odd jobs, and that he kept it in various places in his room because he does not trust banks. Defendant stated that during the past year he has worked between twenty to thirty odd jobs; however, he could only remember the name of two employers. He stated that he had worked at the Gas and Oil station for two weeks during 1998. Defendant testified that he was friends with Cindy Holmes and that he would walk to the gas station to purchase cigarettes. Finally, Defendant denied any involvement in the alleged offense.
After thoroughly reviewing the record, this Court concludes that a rational trier of fact could have found that Defendant committed grand theft and breaking and entering. The evidence established that Defendant lived within walking distance to the gas station. Some of the missing money was found in Defendant's briefcase with the "Gas and Oil" stamp of the store on it. The rest of the money was located at Dave's Auto Sales. In light of the foregoing, this Court concludes that the jury did not lose its way in finding Defendant guilty. Indeed, this is not a case where the evidence weighs heavily in Defendant's favor. Defendant's assignments of error are without merit.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BATCHELDER, P. J. WHITMORE, J. CONCUR